IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLAUDE HOWARD QUEEN, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. 1:13-CV-01717-JFK |

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his applications for a period of disability and supplemental security income. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Claude Queen filed an application for supplemental security income in March 2010, alleging that he became disabled on December 1, 2008. [Record ("R.") at 19, 141-47]. After his application was denied initially and on reconsideration, an

administrative hearing was held on July 20, 2012. [R. at 19, 32-73]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on August 31, 2012, and the Appeals Council denied Plaintiff's request for review on March 22, 2013. [R. at 1-7, 19-26]. Plaintiff filed his complaint in this court on May 23, 2013, seeking judicial review of the Commissioner's final decision. [Doc. 3].

## II.   Facts

The ALJ found that Plaintiff has status post nephrectomy (history of renal cell carcinoma of the left kidney), mild chronic obstructive pulmonary disease ("COPD"), and degenerative disc disease of the cervical and lumbar spine, impairments that are "severe" within the meaning of the Social Security regulations. [R. at 21-22]. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 22-23]. The ALJ found that although Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that he can perform. [R. at 25-26]. As a result, the ALJ concluded that Plaintiff has not been under a disability since March 1, 2010, the date the application was filed. [R. at 26].

The decision of the ALJ [R. at 19-26] states the relevant facts of this case as modified herein as follows:

The claimant worked after the application date, but this work activity did not rise to the level of substantial gainful activity. He testified that he briefly attempted to work, although a review of Agency-generated earnings queries does not show any reported earnings.

The claimant was diagnosed with renal cell carcinoma in September 2010, after complaining of blood in his urine. (Ex. 3F at 8). A computerized tomography (CT) revealed a large mass in the left kidney, as well as signs of diverticulosis, fatty infiltration of the liver, and multiple kidney stones. (Ex. 3F at 14). Biopsy of the kidney confirmed the diagnosis of carcinoma, and the claimant underwent surgical removal of the left kidney in February 2011. (Ex. 5F at 29; Ex. 6F at 7). The claimant has been followed after surgery by nephrologists and his primary care doctor, but there is no evidence suggesting that he was treated with chemotherapy and/or radiation. In April 2011, CT scan of the abdomen and pelvis was negative for signs of recurrent malignancy or metastases. (Ex. 6F at 10).

The claimant's medical history is further significant for mild COPD, as evidenced by pulmonary function testing performed in January 2011. (Ex. 13F at 81).

A stress test was normal for signs of cardiac disease. (Ex. 13F at 54). Additionally, the claimant has complained of persistent neck and back pain, but diagnostic imaging studies showed only "mild" degenerative changes in the cervical spine in October 2011. (Ex. 13F at 91). CT scan of the lumbar spine at the same time showed moderate to marked degenerative narrowing at T-12 and L-1, but only "borderline" foraminal stenosis. (Ex. 13F at 99). There is no evidence of severe spinal stenosis, ruptured disc, or complications of spinal cord compression such as saddle anesthesia or bowel/bladder incontinence. He was referred to pain management specialists, who have treated the claimant with facet joint injections and oral pain medications. (Ex. 14F, 18F). Based on the available evidence, the claimant has not been referred for surgical consultation due to back pain.

The record indicates that the claimant has been treated over the years for gastroesophageal reflux disease (managed by medications, according to Ex. 6F at 13), diabetes mellitus, hypertension, obesity, and inguinal hernia. He underwent removal of melanoma from his scalp in approximately 2010, but there is no evidence of recurrence or metastases. (Ex. 3F at 20; Ex. 5F at 10, 39). He has not had recurrence of diverticulitis and has not required surgery for the impairment. Finally, there is evidence of obesity, with Body Mass Index score of 30. (Ex. 13F at 7).

At the hearing, the claimant testified that he is 55 years old and lives with his wife and adult daughter and her two children. His last work was approximately three years ago. He completed up to the tenth or eleventh grade in school and never obtained a GED. There is no history of military service. Previous jobs include general construction, but he alleges that he can no longer work due to pain in his back and legs and breathing problems.

The claimant's doctors gave him a walker which he uses only about 60 percent of the time because he does not want to become dependent on it. He is able to get around inside and outside of his home. Doctors also prescribed a back brace, but he does not wear it due to breathing problems. He rated his pain at eight or nine out of ten in severity. Difficulties include climbing stairs, bending, squatting, kneeling, or crawling. After about 50 feet of walking, he has to sit down and rest. However, the claimant holds a valid driver's license and was able to drive to the hearing unassisted. He is able to groom, bathe, and dress himself without assistance, and he can prepare simple meals. In addition, he is able to do laundry and sweep, and he often accompanies his mother to the grocery store to help her shop. His nephew helps with mowing the lawn, although the claimant can pick vegetables from the garden. He denied any side effects from medications.

With regard to the claimant's degenerative disc disease, CT scans of the cervical and lumbar spine in January 2011 showed mild degenerative changes, without significant spinal stenosis. (Ex. 13F at 81, 97). Findings on physical examination have been largely unremarkable, i.e., negative straight leg raise test, normal gait, and normal neurological examination in February 2012. (Ex. 14F at 4). His renal cancer has not recurred after nephrectomy, nor has he had any recurrence of melanoma in the scalp. (Exs. 3F, 5F). The claimant informed his pain management physicians in April 2012 that his pain was well managed on his current medication regimen, and in June 2012, his doctor noted he was "progressing well and continue[d] to have good pain relief with the current medications prescribed, and minimal to no side effects." (Ex. 16F at 15; Ex. 18F at 2). He did not require surgical intervention for his inguinal hernia. (Ex. 6F at 10). Finally, there is no evidence of end organ damage attributable to either hypertension or diabetes.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

### III.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'"  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

7

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work

8

experience to determine whether the claimant can perform other work besides his past relevant work." Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

**IV.   Findings of the ALJ**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 1, 2010, the application date.  (20 C.F.R. § 416.971, *et seq.*).

2. The claimant has the following severe impairments: status post nephrectomy (history of renal cell carcinoma of the left kidney), mild chronic obstructive pulmonary disease, and degenerative disc disease of the cervical and lumbar spine.  (20 C.F.R. § 416.920(c)).  The claimant has the following non-severe impairments: gastroesophageal reflux disease, history of melanoma of the scalp, inguinal hernia, diabetes mellitus, diverticulitis by history, and obesity.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except he must avoid concentrated exposure to respiratory irritants such as fumes, dust, odors, and gases.

5. The claimant is unable to perform any past relevant work.  (20 C.F.R. § 416.965).

6.     The claimant was born on September 2, 1956, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (20 C.F.R. § 416.963).

7.     The claimant has a limited education and is able to communicate in English. (20 C.F.R. § 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since March 1, 2010, the date the application was filed. (20 C.F.R. § 416.920(g)).

[R. at 21-26].

**V.   Discussion**

The ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine was a severe impairment but that it did not meet or equal a Listing. [R. at 21]. Plaintiff argues that the ALJ committed error when he evaluated Plaintiff's spine impairment under Listing 1.04, which is labeled "disorders of the spine." [Doc. 15 at 5-10]. According to Plaintiff, the ALJ did not apply the proper legal standard and

10

placed a higher burden on Plaintiff than the listing required. [Doc. 15 at 5-6]. The court agrees with Plaintiff and finds that remand is warranted based on this issue.

The listings relevant to Plaintiff's spine impairment are Listing 1.04A and Listing 1.04C. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.04A, C. For a claimant's spine disorder to meet Listing 1.04A, there must be "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. A claimant is able to meet Listing 1.04C when there is lumbar spinal stenosis which results in "pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. Although the ALJ attempted to summarize in his decision the elements necessary to meet a listing based on a disorder of the spine, he mistakenly combined the requirements from Listing 1.04A and Listing 1.04C. [R. at 23]. The ALJ wrote: "In order to meet listing 1.04, *Disorders of the spine*, the claimant must show nerve root compression characterized

11

by pain, limitation of motion in the spine, motor loss, sensory or reflex loss, positive straight leg raise test, and inability to ambulate effectively." [R. at 23]. As Plaintiff notes, "Listing 1.04A does not require an inability to ambulate effectively and Listing 1.04C does not require limitation of motion in the spine, motor loss, sensory or reflex loss, or positive straight leg raises." [Doc. 17 at 2]. Because the ALJ required Plaintiff to satisfy criteria that Listing 1.04C does not require, the court finds that the ALJ failed to apply the proper legal standard when he evaluated Plaintiff's spine impairment.

Plaintiff argues that the ALJ also mischaracterized medical evidence in the record and that Plaintiff presented evidence that his spine impairment meets or equals Listing 1.04C. [Doc. 15 at 7-10]. In describing his reasons for finding that Plaintiff did not meet the Listing, the ALJ wrote, "Diagnostic imaging studies have shown only 'mild' degenerative changes (Ex. 13F at pp. 97, 99). . . ." [R. at 23]. The ALJ cited to an MRI from October 2011 in support of this assertion. [R. at 23, 655]. Although the MRI report did state that there were "mild degenerative changes," this notation was only found at C1-2 of the cervical spine. [R. at 655]. As the ALJ noted earlier in his decision, the same MRI of the lumbar spine showed "moderate to marked degenerative disc space narrowing" at T12-L1. [R. at 657]. In addition, an MRI from April 2012 noted that there were "multilevel degenerative changes" and that at L4-5 "there is

12

broad based disc bulge with superimposed left paracentral disc protrusion which minimally displaces the traversing left compared to right L5 nerve root." [R. at 750-51]. The ALJ, however, made no mention of the April 2012 MRI in his decision. "An ALJ must consider all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand. . . ." McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) (citation and internal quotation marks omitted). The April 2012 MRI satisfies these criteria, yet there is no indication that the ALJ was aware of this medical evidence.

The ALJ cited to the October 2011 MRI in support of his assertion that diagnostic imaging studies show no sign of "significant spinal stenosis." [R. at 23]. This statement was made in the context of explaining why Plaintiff did not meet Listing 1.04C. [Id.]. But as noted by Plaintiff, Listing 1.04C does not require "significant" stenosis. It only requires "lumbar spinal stenosis" which results in certain limitations such as pain, weakness, and the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. "Spinal stenosis is a narrowing of spaces in the spine (backbone) that results in pressure on the spinal cord and/or nerve roots." http://www.niams.nih.gov/health_info/spinal_stenosis/ (last visited February 2, 2015). In the October 2011 MRI, Plaintiff was found to have "moderate to marked

13

degenerative disc space narrowing" and "borderline neural foraminal stenosis," and in the April 2012 MRI, it was noted that Plaintiff has "congenital spinal canal narrowing." [R. at 657, 750-51]. This evidence establishes that Plaintiff had "lumbar spinal stenosis" as required by Listing 1.04C.

The Listing also states that the spinal stenosis must result in pseudoclaudication, which "is manifested as pain and weakness, and may impair ambulation. Symptoms are usually bilateral, in the low back, buttocks, or thighs. . . . The pain is provoked by extension of the spine, as in walking or merely standing, but is reduced by leaning forward. The distance the individual has to walk before the pain comes on may vary." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00K3. Treatment records show that Plaintiff repeatedly experienced joint pain and muscle weakness. [R. at 792-805, 841-46]. In addition, physicians found that his range of motion "reveals increased pain on flexion at 60 degrees and extension at 20 degrees." [R. at 792-805, 841-46]. Plaintiff also regularly reported having pain rated at around an eight out of ten, and he was instructed by his treating sources to take Lortab for pain three times per day. [Id.]. The April 2012 MRI noted that "[b]one marrow edema at L3-4 anteriorly may be painful." [R. at 751].

14

To meet Listing 1.04C, the lumbar spinal stenosis must result not only in pain and weakness, but in the "inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. Listing 1.00B2b, in turn, provides:

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2). The ALJ wrote that the inability to ambulate effectively is "defined as an extreme limitation of the ability to walk, i.e., having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device." [R. at 23]. The ALJ found that Plaintiff was able to ambulate effectively because there was no evidence in the record that he required the use of a hand-held assistive device. [Id.]. Although the inability to walk without the use of an assistive device is one example of "ineffective ambulation," Listing 1.00B2b makes it clear that there are many others. 20 C.F.R. Pt.

15

404, Subpt. P, App. 1, § 1.00B2b(2). The ALJ made no mention of any of the other examples of ineffective ambulation. [R. at 23].

The court finds that the ALJ did not apply the proper legal standard in evaluating whether Plaintiff was able to ambulate effectively. Plaintiff testified at the administrative hearing that he has difficulty showering and cannot walk far due to extreme pain in his back. [R. at 48-49]. Plaintiff stated, "I carry the milk into the house. Whenever I pick the milk up, and tote in inside, and get it in the kitchen, I have to sit down because my back." [R. at 58]. He testified that when shopping, he is able to "hold on to the buggy, and walk through the store with the buggy" for a maximum of thirty minutes before he has to sit down. [R. at 59]. Plaintiff was admitted to the hospital in April 2012 and was found to "have a radiculopathic kind of pain that originates from the lumbar region and wraps around his abdomen, especially on the left side." [R. at 735]. Plaintiff was given a back brace at that time, but he testified that it negatively affects his breathing. [R. at 62-64, 735]. Plaintiff was also given a walker in April 2012 and stated that he uses it about sixty percent of the time that he is outside his house. [R. at 62-63, 735]. While the ALJ found that Plaintiff could ambulate effectively because he could walk "without the use of a hand-held assistive device," there is no evidence that the ALJ evaluated Plaintiff's walking ability in light

16

of the other examples of ineffective ambulation given in Listing 1.00B2b, such as "the inability to walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2).

## VI.  Conclusion

In summary, the court finds that remand is warranted in this case because the ALJ did not apply the proper legal standards in evaluating Plaintiff's spine impairment, and the court is unable to determine whether Plaintiff has offered sufficient record evidence to establish that he meets Listing 1.04C.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days

17

after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 18th day of February, 2015.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE